Citation Nr: 1806337 
Decision Date: 01/02/18 Archive Date: 02/07/18

DOCKET NO. 13-22 849 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial rating in excess of 10 percent for bilateral hearing loss based on substitution.


ATTORNEY FOR THE BOARD

C. J. Cho, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from March 1952 to March 1955. He died in March 2017. The appellant is his surviving spouse, and she has been properly substituted for the purposes of claims pending before VA at the time of the Veteran's death. See 38 U.S.C. § 5121A (allowing for substitution in case of death of a claimant who dies on or after October 10, 2008).

Prior to discussing the appeal at hand, the Board would be remiss if it did not recognize the Veteran's outstanding service. The Veteran was clearly a credit to the United States Marine Corps and to his family, and his service to his country is greatly appreciated.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In October 2017, the appellant confirmed that she did not want to attend the video conference hearing previously requested by the Veteran and that she would like to have the appeal decided based on the evidence of record. 

The Board also acknowledges that the August 2013 VA Form 8 indicates that the claim for entitlement to service connection for tinnitus is also being appealed; however, neither the Veteran nor the appellant has ever filed a Notice of Disagreement or expressed a wish to file an appeal for this claim. Thus, the only issue before the Board now is the appeal of the claim for entitlement to an initial rating in excess of 10 percent for bilateral hearing loss based on substitution. If the appellant wishes to file an appeal of the claim for entitlement to service connection for tinnitus based on substitution, the appellant is free to do so.

Neither the Veteran nor the appellant has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-7 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (West 2012).


FINDING OF FACT

For the entire initial rating period under appeal, the Veteran's bilateral hearing loss was productive of no worse than Level XI for the right ear and Level I for the left ear.


CONCLUSION OF LAW

For the entire initial rating period under appeal, the criteria for an initial rating in excess of 10 percent for bilateral hearing loss have not been met. 38 U.S.C. § 1155, 5103, 5103A, 5107 (West 2012); 38 C.F.R. § 3.102, 3.159, 4.1, 4.3, 4.7, 4.85, Diagnostic Code 6100 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

A. Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C. § 5100, 5102, 5103, 5103A, 5107 (West 2012); 38 C.F.R. § 3.102, 3.156(a), 3.159, 3.326(a) (2017). 

With respect to the duty to assist, specifically, the Board notes that the duty to assist includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159 (c)(4). In this case, the Veteran was provided with VA audiological examinations in October 2010, October 2012, and September 2016. The examinations are adequate because the examiners were state licensed audiologists, controlled speech discrimination tests (Maryland CNC) and puretone audiometry tests were provided, and the October 2010, October 2012 and September 2016 opinions additionally noted the effect of the hearing loss disability on daily functioning. Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007); 38 C.F.R. § 4.85. Thus, the Board finds the VA examination reports dated October 2010, October 2012, and September 2016 of record to be thorough, complete, and sufficient bases upon which to reach a decision on the Veteran's claim for an increased rating for a bilateral hearing loss. See Nieves-Rodriguez, 22 Vet. App. 295; Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As such, the Board will now discuss the merits of the claim.


B. Initial Rating Claim

Disability ratings are determined by the application of a schedule of ratings that is based on average impairment of earning capacity. 38 U.S.C. § 1155 (West 2012). Percentage ratings are determined by comparing the manifestations of a particular disability with the requirements contained in VA's Schedule for Rating Disabilities. The percentage ratings contained in the Rating Schedule represent, as far as can practically be determined, the average impairment in earning capacity resulting from a disease or injury and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In view of the number of atypical instances, it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. 38 C.F.R. § 4.21. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent with the facts shown in every case. Any reasonable doubt regarding the degree of disability is resolved in favor of the appellant. 38 C.F.R. § 3.102, 4.3.

Assignment of a disability rating for hearing loss is derived by a mechanical application of the rating schedule to the specific numeric designations assigned after audiology testing is completed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. 38 C.F.R. § 4.85 (a). 

The rating schedule establishes 11 auditory hearing acuity levels based upon average puretone thresholds and speech discrimination. See 38 C.F.R. § 4.85. "Puretone threshold average" as used in Tables VI and VIA is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz and divided by four. This average is used in all cases (including those of §4.86) to determine a Roman numeral designation from Tables VI and VIA. 38 C.F.R. § 4.85 (d).

Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination," is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the row and column intersect. 38 C.F.R. § 4.85 (b).

Table VIA, "Numeric Designation of Hearing Impairment Based Only on Puretone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on puretone threshold average. Table VIA is used when the examiner certifies that the use of the speech discrimination test is not appropriate due to language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of § 4.86. 38 C.F.R. § 4.85 (c).

Table VII, "Percentage Evaluations of Hearing Impairment," is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment in each ear. The horizontal rows represent the ear having better hearing and the vertical columns represent the ear having the poorer hearing. The percentage evaluation is located at the point where the row and the column intersect. 38 C.F.R. § 4.85 (e).

Special provisions apply in instances of exceptional hearing loss. See 38 C.F.R. § 4.86. When the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) are all 55 decibels or more, the adjudicator must determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA in 38 C.F.R. § 4.85 , whichever results in the higher numeral. 38 C.F.R. § 4.86 (a). 

Also, when the puretone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear is evaluated separately. 38 C.F.R. § 4.86 (b).

Here, the appellant is appealing the original assignment of the Veteran's disability evaluation following the award of service connection for the Veteran's bilateral hearing loss. Thus, it is not the present level of disability which is of primary importance, but rather the entire period is to be considered to ensure that consideration is given to the possibility of staged ratings; that is, separate ratings for separate periods of time based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

A rating of 10 percent from September 19, 2009 (the date VA received the Veteran's claim) forward for service-connected bilateral hearing loss is currently assigned. 


C. Legal Analysis and Conclusion

For the entire initial rating period, the Veteran's service-connected bilateral hearing loss did not more nearly approximate that required for a higher initial rating in excess of 10 percent under Diagnostic Code 6100.

An August 2009 VA Audiology Progress note shows the Veteran's report that he has had hearing problems in his right ear since he was in service. 

A September 2009 Veteran's Statement shows that the Veteran contends he is totally deaf in his right ear and is experiencing hearing loss in his left ear.

The Veteran was provided with a VA audiological examination in October 2010. The results of the October 2010 VA examination, as measured by puretone audiometry test, are: (1) for the Veteran's right ear: 110, 110, 110, 110 and 110 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively, and (2) for the Veteran's left ear, 20, 15, 15, 45 and 45 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively. Based on these results, the average puretone threshold was 105 decibels for the right ear and 30 decibels for the left ear. See 38 C.F.R. § 4.85 (d). Speech recognition was less than 70 percent for the right ear and 96 percent for the left ear, as measured by the Maryland CNC test. As to functional impairment, the October 2010 examiner also noted difficulty with hearing especially when in a background of noise. From applying these values to Table VI, the result is a Level I for the left ear. Moreover, based on these results the Veteran displayed an exceptional pattern of hearing loss in the right ear during this period. See 38 C.F.R. § 4.86. As such, the Veteran's Roman numeral designation for the right ear for this period from applying these values to Table VIA under 38 C.F.R. § 4.85 is a Level XI for the right ear based on puretone threshold average. When the designations of Level XI for the right ear and Level I for the left ear are applied to Table VII, the result is a 10 percent rating. 38 C.F.R. § 4.85.

A November 2010 Notice of Disagreement shows the Veteran's report that his hearing loss is much more severe than the 10 percent rating currently assigned. He also stated that he is totally unable to hear the majority of conversations around him and that he cannot hear at all out of his left ear. He further stated that the loud and constant noise during his active duty service in the Korean War has left him barely able to hear. 

The Veteran was provided with another VA audiological examination in October 2012. The results of the October 2012 VA examination, as measured by puretone audiometry test, are: (1) for the Veteran's right ear: 105, 105, 105, 105, 105 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively, and (2) for the Veteran's left ear, 25, 25, 25, 50, 45 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively. Based on these results, the average puretone threshold was 105 decibels for the right ear and 36 decibels for the left ear. See 38 C.F.R. § 4.85 (d). Speech recognition was unable to be tested for the right ear and 92 percent for the left ear, as measured by the Maryland CNC test. As to functional impairment, the October 2012 VA examiner also noted that the Veteran's hearing loss did not impact the ordinary conditions of his daily life, including ability to work. From applying these values to Table VI, the result is a Level I for the left ear. Moreover, based on these results, the Veteran displayed an exceptional pattern of hearing loss in the right ear during this period. See 38 C.F.R. § 4.86. As such, the Veteran's Roman numeral designation for the right ear for this period from applying these values to Table VIA under 38 C.F.R. § 4.85 is a Level XI for the right ear based on puretone threshold average. When the designations of Level XI for the right ear and Level I for the left ear are applied to Table VII, the result is a 10 percent rating. 38 C.F.R. § 4.85.

In a July 2013 VA Form 9, the appellant, on behalf of the Veteran, reported that it is the Veteran's left ear (and not the right ear) that is 100 percent deaf.

The Veteran was provided with a final VA audiological examination in September 2016. The results of the September 2016 VA examination, as measured by puretone audiometry test, are: (1) for the Veteran's right ear: 105, 105, 105, 105, and 105 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively, and (2) for the Veteran's left ear, 20, 15, 20, 50, and 50 decibels at 500, 1000, 2000, 3000 and 4000 Hertz, respectively. Based on these results, the average puretone threshold was 105 decibels for the right ear and 34 decibels for the left ear. See 38 C.F.R. § 4.85 (d). Speech recognition could not be tested for the right ear and 96 percent for the left ear, as measured by the Maryland CNC test. As to functional impairment, the September 2016 examiner also noted difficulty with hearing others. From applying these values to Table VI, the result is a Level I for the left ear. Moreover, based on these results the Veteran displayed an exceptional pattern of hearing loss in the right ear during this period. See 38 C.F.R. § 4.86. As such, the Veteran's Roman numeral designation for the right ear for this period from applying these values to Table VIA under 38 C.F.R. § 4.85 is a Level XI for the right ear based on puretone threshold average. When the designations of Level XI for the right ear and Level I for the left ear are applied to Table VII, the result is a 10 percent rating. 38 C.F.R. § 4.85.

No further adequate objective audiometric testing results are of record. 

While the Board notes that the Veteran was provided with a VA audiogram in September 2009, it is unclear from the face of the record whether the audiogram used the requisite Maryland CNC controlled speech discrimination test as the word test. See September 2009 VA Audiology Evaluation Note. Furthermore, a remand to obtain clarification from the examiners as to which type of word test was utilized would be unreasonable because, here, even assuming that the controlled speech discrimination tests listed were the Maryland CNC test, the results of the exam would not warrant a compensable disability evaluation. See Savage, 24 Vet. App. at 259. Thus, this record does not provide the evidence needed to support increased ratings for this period. See Savage, 24 Vet. App. at 259.

The Board has also considered the Veteran's and Appellant's lay statements in which they contended that the Veteran's bilateral hearing loss was worse than as currently rated, and their further contention that it was the Veteran's left ear that was 100 percent deaf and not the right ear. However, as indicated above, rating a hearing loss disability involves the mechanical application of rating criteria to the results of specified audiometric studies. 

Here, the objective medical evidence of record consists of the October 2010, October 2012, and September 2016 audiological examinations, that all indicate that the Veteran's bilateral hearing loss most nearly approximates a 10 percent rating. See 38 C.F.R. § 4.85. Thus, the preponderance of the evidence is against entitlement to higher ratings and the benefit of the doubt rule is not applicable here.

Furthermore, all potentially applicable codes have been considered, and there is no basis to assign an evaluation in excess of the currently assigned ratings for the Veteran's bilateral hearing loss. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). Additionally, further staged ratings are not warranted, as any further increases in severity were not sufficient for a higher rating for the reasons discussed above. See Fenderson, 12 Vet. App. at 126-27.

Based on the foregoing, the Board concludes that the appellant is not entitled to an initial evaluation in excess of 10 percent for bilateral hearing loss under 38 C.F.R. § 4.85 Diagnostic Code 6100 or 38 C.F.R. § 4.86 (a) or 38 C.F.R. § 4.86 (b) on the basis of substitution. 




ORDER

Entitlement to an initial evaluation in excess of 10 percent for bilateral hearing loss on the basis of substitution is denied.







____________________________________________
YVETTE R. WHITE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs